TINER v. STATE.

June 9, 1952.

No. 38412 (59 So. (2d) 287)

552

J. B. Boyles, for appellant.

Geo. H. Ethridge, Assistant Attorney General, for appellee.

Kyle, J.

The appellant, Roland Tiner, was indicted, tried and convicted in the Circuit Court of the Second Judicial District of Panola County on a charge of forgery, and was sentenced to imprisonment in the state penitentiary for a term of four years. And from that judgment he prosecutes this appeal.

The indictment charged that the defendant "did then and there wilfully, unlawfully and feloniously and falsely forge and counterfeit, intending to cheat and defraud Bickerstaff & Garner Co., a copartnership composed of E. L. Garner and W. O. Bickerstaff, a certain instrument of writing, to-wit," a check which is copied in full in the indictment, drawn on the Bank of Batesville for the sum of $90.85, payable to the order of Roland Tiner, and signed by Bickerstaff & Garner, by E. L. Garner, "said check having been drawn in the original sum of $9.85 as issued by the said Bickerstaff & Garner to the said Roland Tiner." The forgery charged in the indictment therefore consisted of an alleged alteration of the check, which had been issued to the defendant for the sum of $9.85, by raising the amount of the check to $90.85.

The State's proof consisted of the testimony of E. L. Garner, Mrs. Earl Brown and Sherman Wardlaw. Brown testified that he was a member of the construction firm of Bickerstaff & Garner, and that he issued the check to Tiner on May 4, 1951, for the sum of $9.85 for one and one-half day's work; that the check was drawn on the Bank of Batesville; and that when he received his bank statement, with his cancelled checks, at the end of the month, he discovered that the check had been altered and that the bank had charged his account with the sum of $90.85. The check was introduced in evidence as an exhibit to Garner's testimony, and it appeared that the check had been endorsed by Roland Tiner and Wardlaw Service Station. Mrs. Earl Brown, an employee of Garner Motor Company, testified that she had prepared the check for $9.85 at Garner's request, and when the check was exhibited to her she stated that the letters had been traced over, that a zero had been added, and that the letter "e" had been changed to the letter "t" and a "y" added, so as to make the "nine" read "ninty."

Sherman Wardlaw testified that he operated the Sinclair Service Station on U. S. Highway No. 51, and that he cashed the check for Tiner for the sum of $90.85 on Saturday evening; that he gave Tiner $20 on the check Saturday evening and the balance of the money the next morning; that he endorsed the check and deposited it in the Bank of Batesville. The defendant, who was not represented by an attorney, cross-examined Wardlaw while Wardlaw was on the witness stand; and in answer to questions asked him by the defendant Wardlaw stated that before he agreed to cash the check he called Garner on the telephone and asked him whether the defendant was working for him. Garner stated that the defendant was working for him. Wardlaw then told Garner that the defendant had given him a check, and Garner told Wardlaw that it would be all right if it had Bickerstaff & Garner's name on it. Wardlaw said that he did not tell Garner at that time what the amount of the check was.

The defendant, testifying in his own behalf, stated that he had worked for Garner a day and a half, and that the check for $9.85 had been given to him in payment for his work, and that when he endorsed the check and gave it to Wardlaw it was a check for $9.85; that he owed Wardlaw an account, which Wardlaw deducted from the amount called for in the check; and that his best recollection was that Wardlaw paid him in money about $4.85. The defendant examined the cancelled check while he was on the witness stand, and stated that it was not in the same condition that it was in when he gave it to Wardlaw, that it had been raised from $9.85 to $90.85, and that it appeared that the defendant's name had been traced over on the face of the check in ink of a different color. The defendant denied that the alterations in the check had been made by him, and stated that the alterations had been made since he gave the check to Wardlaw.

No other witness testified for the defendant.

The State called E. B. Wilson, the sheriff, as a witness in rebuttal, and the district attorney asked the witness whether he knew Mr. Sherman Wardlaw. The witness stated that he did. The district attorney asked the witness, "Do you know his general reputation for honesty and integrity in the community in which he lives?" The witness answered, "Yes, sir." The district attorney then asked the witness the question, "Is it good, or bad?" and the witness stated that it was "Good." The district attorney stated this this testimony was offered because the defendant had put Mr. Wardlaw's reputation in issue.

The first point argued by the appellant's attorney in his brief relates to the sufficiency of the charge alleged in the indictment. But no demurrer to the indictment was filed, and inasmuch as the judgment of the lower court must be reversed on other grounds, we shall pretermit a discussion of the technical objections made to the indictment.

The next point argued by the appellant's attorney is that the court erred in granting the following instruction to the State:

"The Court instructs the jury for the State that if you believe from the evidence in this case beyond all reasonable doubt that the defendant, Roland Tiner, did wilfully, unlawfully and feloniously forge, alter, and change a check given to him by Ernest Garner of the partnership of Bickerstaff & Garner of date May 4, 1951, with the intent then and there of him the said Roland Tiner, to wilfully, unlawfully, and feloniously, cheat, wrong, and defraud Bickerstaff & Garner, by raising the same in words and figures from $9.85 to $90.85 as testified to by the witnesses, and that the said Roland Tiner did wilfully, unlawfully, and feloniously receive thereon the said sum of $90.85 in cash or value it will be your sworn duty to find the defendant guilty as charged in the indictment."

■■ It was error for the court to grant the abovementioned instruction with the words "as testified to by the witnesses" in it. The instruction by implication ignored the fact that the defendant had testified as a witness in his own behalf. He, of course, did not testify that he had raised the check. And neither Garner nor Mrs. Brown testified that the defendant had raised the check. They testified that the check had been issued for the sum of $9.85, and that it had been raised from $9.85 to $90.85; but neither of them testified that the defendant was the person who had raised the check. Wardlaw testified that the check, when it was presented to him at the Sinclair Service Station, called for $90.85; but Wardlaw did not testify that Tiner had raised the check. If Wardlaw had known that Tiner had raised the check from $9.85 to $90.85, it is safe to assume that he would not have cashed the check for Tiner. The evidence of the State's witnesses was circumstantial evidence. None of the State's witnesses testified that they had seen Tiner raise the check, or that the alterations which had been made in the check were in Tiner's handwriting. Yet, from the instruction given to the State the jury may have reasonably assumed

that in the opinion of the court, Garner, Mrs. Brown and Wardlaw had all testified in effect that Tiner had raised the check. The instruction, when properly analyzed, was susceptible of being construed as a comment upon the weight of the testimony of the three State witnesses. The court erred in granting the instruction in the form requested, and because of that error the judgment of the lower court must be reversed and a new trial granted.

The appellant's attorney also contends that the court erred in failing to instruct the jury for the defendant as to the elements of the crime of forgery. But no request was made by the defendant for an instruction setting forth the elements of the crime of forgery, and the trial judge cannot be put in error for failure to grant an instruction which was not requested.

The appellant's attorney also assigns as error the action of the court in permitting the State to prove the general reputation of Wardlaw for honesty and integrity. But no objection was made to that testimony when it was offered. It is only in exceptional cases that this Court will consider assignments of error based upon the admission of testimony which was not objected to at the time it was offered. However, in view of the fact that the same testimony may be offered on a new trial, we do say here that the court should not have permitted the State to prove in rebuttal Wardlaw's general reputation for honesty and integrity under the facts shown by the record. The defendant had not put Wardlaw's reputation in issue. The defendant had merely denied that the alteration in the check had been made prior to the time that he delivered the check to Wardlaw. The main question of fact which the jury had to decide was whether the defendant or Wardlaw had told the truth about the check. And under these circumstances it was highly prejudicial to the defendant to permit the State to bolster Wardlaw's testimony by having the sheriff testify as to his reputation for honesty and integrity. The exact question that we have before us here was passed upon by the Court in the case

of Brewer v. Mullins, 97 Miss. 353, 52 So. 257, and in the case of McEwen v. State, 132 Miss. 338, 96 So. 690.

For the reason stated above, the judgment of the lower court is reversed and the cause remanded for a new trial.

Reversed and remanded.

**McGehee, C. J.,** and **Alexander, Hall** and **Holmes, JJ.,** concur.